IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORMAN NIELSON, | |
| Plaintiff, | **8:23CV21** |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, | **MEMORANDUM AND ORDER ON MOTIONS IN LIMINE** |
| Defendant. | |

Plaintiff Norman Nielson has sued his former employer defendant Union Pacific Railroad Company for negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. Filing 36. Nielson suffered an injury to his foot after it was compacted between the coupling mechanisms of two railcars. Filing 42 at 2 (¶ 11); Filing 48 at 5 (¶ 23). This Court granted Nielson's Motion for Partial Summary Judgment on Union Pacific's liability leaving the issue of damages for a jury trial. Filing 53. This case is now before the Court on Nielson's four separate Motions in Limine, Filing 62; Filing 64; Filing 66; Filing 68, and Union Pacific's Motions in Limine Nos. 1–6, Filing 72, filed in anticipation of the jury trial on damages set to begin on October 15, 2024.

## I. INTRODUCTION

The Court set out the pertinent factual background in its Memorandum and Order on Plaintiff's Motion for Partial Summary Judgment. Filing 53 at 2–5. *Nielson v. Union Pac. R.R. Co.*, No. 8:23-CV-21, 2024 WL 3201632, at *1–*2 (D. Neb. June 20, 2024). Thus, the Court need not do so again, as the factual background has not changed in the interim.

Nielson filed his Motion for Partial Summary Judgment on April 1, 2024, seeking summary judgment on Union Pacific's liability and leaving damages to the jury. Filing 40. Nielson also

sought summary judgment on two of Union Pacific's affirmative defenses: sole-cause and contributory negligence. Filing 40. In its ruling on that Motion on June 20, 2024, the Court determined that Union Pacific violated a federal safety statute, 49 C.F.R. § 218.99(b)(3), and found an exception in 49 C.F.R. § 218.99(d) was not applicable. Filing 53 at 13–14. The Court also determined that Union Pacific's violation of that safety statute caused Nielsen's injury, so that Union Pacific is liable for negligence per se. Filing 53 at 14–16. The Court concluded that Union Pacific's violation of a federal safety statute that caused Nielson's injury constitutes negligence per se, establishing Union Pacific's liability and eliminating its sole-cause and contributory negligence affirmative defenses. Filing 53 at 17. These conclusions left the measure of Nielson's damages and Union Pacific's affirmative defense of failure to mitigate damages as the only issues for trial to a jury. Filing 53 at 17; *Nielson*, 2024 WL 3201632, at *8.

On August 26, 2024, more than two months after the Court's summary judgment ruling, Union Pacific filed a Motion to Reconsider. Filing 54. On September 26, 2024, the Court denied Union Pacific's Motion to Reconsider. Filing 80. *Nielson v. Union Pacific Railroad Company*, No. 8:23CV21, 2024 WL 4307623 (D. Neb. Sept. 26, 2024). The Court found that Union Pacific's Motion was improper under Rule 60(b), which alone justified denial of Union Pacific's Motion. Filing 80 at 10. However, the Court also denied the Motion to Reconsider on the merits. Filing 80 at 12; *Nielson*, 2024 WL 4307623, at *7.

## II. LEGAL ANALYSIS

The Court will address the five Motions in Limine in the order in which they were filed. However, the Court will first set out the standards applicable to most of the categories of evidence challenged by the parties, which involve relevance and prejudice.

## A.  Evidentiary Standards Involving Relevance and Prejudice

Federal Rule of Evidence 401 provides, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "The threshold for relevance is 'quite minimal.'" *United States v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005) (quoting *United States v. Guerrero-Cortez*, 110 F.3d 647, 652 (8th Cir.1997)). Federal Rule of Evidence 402 provides that irrelevant evidence is inadmissible. "Under Federal Rule of Evidence 402, evidence that is not relevant—that is, having 'any tendency to make' the existence of any fact that is of consequence to the determination of the action 'more or less probable than it would be without the evidence,' *see* Fed. R. Evid. 401— is not admissible." *United States v. Finley*, 56 F.4th 1159, 1167 (8th Cir. 2023).

Not all relevant evidence is admissible, however. Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Dozier*, 31 F.4th 624, 628 (8th Cir.), *cert. denied*, 143 S. Ct. 237 (2022). "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial." *United States v. Wright*, 993 F.3d 1054, 1061 (8th Cir. 2021) (citation omitted; emphasis in the original). Evidence excludable under Rule 403, then, is "the kind of evidence that 'divert[s] the jury's attention from the material issues in the trial'" and does not aid the jury in determining any matter at issue. *United States v. Mink*, 9 F.4th 590, 604 (8th Cir. 2021) (quoting *Wright*, 993 F.3d at 1061), *cert. denied*, 142 S. Ct. 1166 (2022). Thus, for example, evidence may be excluded pursuant to Rule 403 if its probative value

is "outweighed by the risk of distraction in conducting mini trials on the detailed facts underlying" the specific matter the evidence addresses. *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014). More generally, "[u]nfair prejudice means an undue tendency to suggest decision on an improper basis, including evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *United States v. Redd*, 81 F.4th 822, 828 (8th Cir. 2023) (citation omitted), *cert. denied*, 144 S. Ct. 866 (2024). The Eighth Circuit "afford[s] great deference to a district court's balancing under Rule 403 'of the probative value and prejudicial impact of the evidence.'" *Id.* A trial court's exclusion of evidence under Rule 403 is entitled to substantial deference "so long as the trial court's exercise of discretion '[does] not unfairly prevent a party from proving [its] case.'" *United States v. Woods*, 978 F.3d 554, 566 (8th Cir. 2020) (quoting *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 716 (8th Cir. 2001)).

With these standards in mind, the Court turns to consideration in turn of the five evidentiary motions now before the Court. The Court will summarize additional evidentiary or other applicable standards where necessary.

### B. Plaintiff's Motion to Exclude Evidence of Plaintiff's Cancer Diagnosis

In his first Motion in Limine, Nielson seeks exclusion of argument or testimony related to his cancer diagnosis. Filing 62. Nielson argues that such evidence would be totally improper, irrelevant, confusing to the jury, and unfairly prejudicial. Filing 63 at 1. He contends that Union Pacific has offered no medical opinion stating that Nielson's cancer diagnosis is relevant to any potentially material question at trial, such as life expectancy or pain. Filing 63 at 1–2. He argues further that none of the disclosures for Union Pacific's experts so much as mentions the words

"cancer" or "lymphoma," while one expert mentioned "lymphoma" in his report but did not discuss, analyze, or offer any opinions on the effect of Nielson's cancer. Filing 63 at 2–3. Thus, Nielson contends that Union Pacific has no foundation in the record for raising a highly prejudicial reference to his cancer diagnosis, which jurors may "instinctively" misconceive as impacting his life expectancy or ability to return to work. Filing 63 at 3.

Union Pacific did not respond to this Motion separately but instead addressed the admissibility of Nielson's cancer diagnosis along with other evidence of Nielson's prior medical treatment and conditions. Filing 87 at 3. Union Pacific argues that Nielson's cancer is a serious medical condition that is relevant and would assist the jurors' evaluation of Nielson's damages, including his ability to work and his life expectancy. Filing 87 at 4. Union Pacific also argues that Nielson put his health and medical conditions at issue by filing this lawsuit, so that Union Pacific will be prejudiced if it is prevented from presenting an accurate and complete picture of Nielson's health. Filing 87 at 4.

In reply, Nielson argues that the question is whether Union Pacific has sufficient evidence that would link his specific cancer diagnosis to any material issue in the case, including his life expectancy. Filing 94 at 1. Nielson answers that question no. Filing 94 at 1. He argues that with no expert evidence that even carries the suggestion that his cancer impacts his life expectancy or ability to return to work, Union Pacific's argument would be pure, unfounded speculation. Filing 94 at 2.

The Eighth Circuit Court of Appeals has explained that "'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *United States v. Banks*, 43 F.4th 912, 918 (8th Cir. 2022) (quoting *A.I. Credit Corp. v. Legion Ins. Co*., 265 F.3d

630, 637 (7th Cir. 2001)). However, Union Pacific as the proponent of evidence must establish a proper foundation by showing that the specific evidence of Nielson's cancer is relevant and admissible in the defense of Nielson's claim for damages for Union Pacific's negligence. *See Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 631 (8th Cir. 2024) ("Dyno as the proponent of that evidence must establish a proper foundation by showing that specific absence-of-prior-accidents evidence was relevant and admissible in the defense of Teddy's negligence claim.").

Evidence that a plaintiff seeking damages for a negligent injury has cancer is relevant to damages in the sense that it makes it more likely that his life expectancy would be shorter, that his ability to work is impacted, or that he suffers from pain unrelated to the injury that is the basis for the negligence claim. *See* Fed. R. Evid. 401 (defining relevance as having a tendency to make a fact more or less probable and the fact is of consequence in determining the action); *see Scott*, 108 F.4th at 631 (explaining that one requirement to establish foundation is a showing of relevance). Again, "[t]he threshold for relevance is 'quite minimal.'" *Holmes*, 413 F.3d at 773 (quoting *Guerrero-Cortez*, 110 F.3d at 652).

As to whether evidence of Nielson's cancer diagnosis is admissible as well as relevant, *see Scott*, 108 F.4th at 631, a diagnosis of cancer is not so obviously inflammatory as to invite a decision on an improper basis. *See* Redd, 81 F.4th at 828 (explaining that "unfair prejudice" under Rule 403 means that the evidence "is so inflammatory on its face as to divert the jury attention from the material issues in the trial"). Nielson has put his physical condition at issue, which makes it inappropriate to allow him to pick and choose what aspects of his physical condition can be considered by the jury. To the extent that Nielson is concerned that jurors will react emotionally to his cancer diagnosis and leap to the conclusion that it impacts Nielson's life expectancy, pain,

or ability to work, he can remedy that situation himself by presenting evidence that his cancer does not in fact have such impacts.

Therefore, Nielson's Motion in Limine to Exclude Argument or Testimony Related to Plaintiff's Cancer Diagnosis, Filing 62, is denied.

### C.  Plaintiff's Motion to Exclude Argument or Testimony that Nielson Should Have Participated in a Functional Capacity Evaluation

The next Motion before the Court is Nielson's Motion in Limine to Exclude Argument or Testimony Stating Plaintiff Should Have Participated in a Functional Capacity Evaluation. Filing 64. Nielson describes a functional capacity evaluation (FCE) as "a diagnostic medical tool that aids in determining the physical limitations required for a patient." Filing 65 at 1. Union Pacific provides a similar description, explaining that an FCE "is a set of tests that are used to identify a person's physical skills, functional capabilities, activity endurance, and work tolerance." Filing 83 at 2.

Nielson argues that evidence concerning an FCE would be totally improper because Union Pacific has offered no medical opinion stating that an FCE was warranted or needed (or mentioning an FCE at all). Filing 65 at 1–2. He argues further that his treating doctor did not refer him for an FCE. Filing 65 at 1–2. Nielson points out that none of the disclosures for Union Pacific's retained experts mentions "functional capacity" or "FCE" and Union Pacific's medical expert did not mention those terms in his report. Filing 65 at 2.

Union Pacific counters that the record is clear that all Nielson's listed expert medical providers were aware of what an FCE is but that they did not conduct one, or were not qualified to conduct one, or did not order Nielson to undergo one, Filing 83 at 4. Union Pacific clarifies that

it will not offer evidence or argument that Nielson refused to submit to an FCE, only evidence showing that his medical experts did not order FCEs, which goes to the credibility of their restrictions on Nielson's physical abilities. Filing 83 at 5.

In reply, Nielson argues that Union Pacific is not entitled to impugn his credibility or the credibility of his witnesses based on the unfounded and speculative implication that an FCE was appropriate but was not ordered. Filing 95 at 1.

The Court reads Union Pacific's response to be a representation that Union Pacific will not offer any evidence related to an FCE for the purpose that Nielson sought to exclude it, that is, to argue that Nielson "Should Have Participated in a Functional Capacity Evaluation." Filing 64 at 1. Holding Union Pacific to that representation, the question then becomes whether evidence related to an FCE is admissible for the purpose Union Pacific intends, which is to challenge the credibility of Nielson's medical experts' opinions about Nielson's physical limitations. The Court concludes that argument and testimony that Nielson's medical experts did not order FCEs for him are relevant and not unduly prejudicial.

Such argument and testimony are relevant because they may make it more or less likely that Nielson's medical experts had an appropriate basis for their opinions about Nielson's physical limitations. *See* Fed. R. Evid. 401 (defining relevance); Fed. R. Evid. 702 (stating requirements for expert opinions); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021) (explaining that "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means'" of impeaching expert testimony (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 596 (1993)), *cert. denied sub nom. 3M Co. v. Amador*, 142 S. Ct. 2731 (2022). It is not unfairly

prejudicial to admit such argument and testimony where Union Pacific cites evidence that each expert admits to knowing what an FCE is and either provided an explanation of why he or she did not order an FCE for Nielson or was not qualified to give an FCE. Filing 83 at 2–4. The Court finds questions to Nielson's experts about whether an FCE was appropriate are not unduly speculative or unduly prejudicial even if Union Pacific does not offer an expert's opinion that an FCE was appropriate.

Therefore, Nielson's Motion in Limine to Exclude Argument or Testimony Stating Plaintiff Should Have Participated in a Functional Capacity Evaluation, Filing 64, is denied.

### D.  Plaintiff's Motion to Exclude Argument or Testimony on Failure to Follow Medical Advice

Nielson's third evidentiary motion is his Motion in Limine to Exclude Argument or Testimony on Failure to Follow Medical Advice. Filing 66 at 1. This Motion asks the Court to exclude any argument or testimony by Union Pacific to the effect that Nielson failed to mitigate his medical damages by failing to follow medical advice, obtain appropriate treatment, or similar argument or testimony. Filing 67 at 1–2. Nielson argues that Union Pacific has not provided notice of any expert who will offer the opinion that Nielson failed to mitigate his medical damages at all, let alone any evidence that Nielson failed to follow medical advice. Filing 67 at 2. Indeed, Nielson contends that Union Pacific's Rule 30(b)(6) deponent admitted that there was no evidence that Nielson failed to follow medical advice. Filing 67 at 2.

Union Pacific responds that Nielson is making a preemptive attempt to prevent Union Pacific's medical expert from offering his opinion that Nielson would benefit from certain measures or accommodations. Filing 85 at 2. However, Union Pacific argues that its medical expert should be allowed to testify about his treatment recommendations for Nielson and Nielson's ability

to return to work as a switchman without restrictions. Filing 85 at 3. Union Pacific contends that the fact that its medical expert and Nielson's treating physician disagree is not grounds for exclusion of its expert's opinion. Filing 85 at 3.

In reply, Nielson argues that it is "axiomatic" that a person must have first received medical advice and subsequently failed to reasonably follow it before an argument can be made that the person failed to follow medical recommendations, but Union Pacific has no such evidence. Filing 93 at 3.

The Court finds that Union Pacific's response misses or misconstrues the point of this Motion in Limine. What Nielson asks the Court to exclude is "Argument or Testimony on Failure to Follow Medical Advice," Filing 66 at 1, not to preclude Union Pacific's medical expert from offering his opinion that Nielson would benefit from certain measures or accommodations, Filing 85 at 2. Logically, Nielson cannot fail to follow medical advice that he never received or fail to obtain medical treatment that he was never prescribed. To the extent that Nielson seeks to bar evidence that he failed to foll ow medical advice, his Motion in Limine is granted.

As to Union Pacific's argument that its medical expert should be allowed to testify about his treatment recommendations for Nielson and about Nielson's ability to return to work as a switchman without restrictions, Filing 85 at 3, that evidence is not relevant to the question of whether Nielson failed to mitigate his damages. Such testimony does not relate to any treatment recommended or prescribed for Nielson. Such evidence is only relevant—if at all—to the extent that it may make it more or less likely that Nielson's medical experts had an appropriate basis for their opinions about Nielson's physical limitations. *See* Fed. R. Evid. 401 (defining relevance); Fed. R. Evid. 702 (stating requirements for expert opinions); *In re Bair Hugger*, 9 F.4th at 778

(explaining that "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means'" of impeaching expert testimony (quoting *Daubert*, 509 U.S. at 596)).

Nielson's Motion in Limine to Exclude Argument or Testimony on Failure to Follow Medical Advice, Filing 66 at 1, is granted. Also, Union Pacific will not be allowed to argue that its medical expert's different or additional treatment recommendations demonstrate Nielson's failure to mitigate his damages. On the other hand, Union Pacific will be allowed to elicit its medical expert's opinions on different or additional treatment recommendations that he would have made for the purpose of impeaching Nielson's medical experts' opinions about Nielson's physical limitations. If Union Pacific offers such evidence for this proper purpose, and Nielson wants a limiting instruction on the proper purpose for which the evidence can be used, Nielson must propose such a limiting instruction.

### E.  Plaintiff's "Omnibus" Evidentiary Motion

Nielson's last evidentiary motion is his Omnibus Motion in Limine. Filing 68. In that Motion, Nielson challenges ten categories of evidence. Filing 68 at 1–10. Union Pacific has no objection to exclusion of categories 5 through 9 in Nielson's Motion. Filing 87 at 6.[1] Indeed, the lack of objection to exclusion of these categories of evidence leads the Court to the conclusion that they should never have been challenged by motion because the parties could have resolved the issue by consultation, saving everyone—including the Court—time and effort. Nevertheless,

---

[1] These undisputed categories of inadmissible evidence are "All Evidence, Statements, or Comments Concerning any Americans with Disabilities Act Accommodations or other possible accommodations UP could make that were never offered" (category 5); "All Evidence, Statements, or Comments Concerning Plaintiff's Employment of Attorneys" (category 6); "All Evidence, Statements, or Comments Related to Plaintiff's Motivation for Litigation" (category 7); "All Evidence and Testimony Related to Foster Peterson and Jeffery Broker" (category 8); and "All Evidence and Testimony Related to Past Discipline" (category 9). *See* Filing 68 at 1–2; Filing 87 at 6.

Nielson's Omnibus Motion in Limine, Filing 68, is granted as to categories 5 through 9. The Court turns to consideration of the remaining five categories of disputed evidence.

   *1.  Evidence and Argument that Plaintiff Received Collateral Source Benefits*

   Nielson's first category of evidence in his Omnibus Motion is described as "[a]ll evidence, arguments, and comments concerning Plaintiff receiving collateral source benefits including, but not limited to U.S. Railroad Retirement Board (RRB) sickness benefits." Filing 68 at 1. Nielson explains that because he is a railroad employee, he is covered under the U.S. Railroad Retirement Board Act, 45 U.S.C. § 231 *et seq*., rather than the U.S. Social Security Act, 42 U.S.C. § 301 *et seq.* Filing 69 at 8. He argues further that it is well-established that RRB benefits are considered benefits received from a collateral source. Filing 69 at 8. Next, he argues that it is also well-established that evidence of a plaintiff receiving benefits from a collateral source is inadmissible at trial. Filing 69 at 8. He contends that the U.S. Supreme Court expressly held that evidence of a disability pension is strictly inadmissible at trial and that other courts have rejected attempts to narrow that holding. Filing 69 at 8–9. Consequently, he asks the Court to exclude all evidence that he received RRB benefits or benefits from any other collateral source and that all Defendants' witnesses be instructed not to mention such benefits. Filing 69 at 9.

   Union Pacific represents that it does not intend to offer such evidence, but that it should not be precluded from doing so if Nielson "opens the door" by introducing issues or evidence that make such benefits relevant. Filing 87 at 1. Union Pacific suggest that such evidence has been considered relevant, for example, to rebut evidence that a plaintiff had to return to work immediately after surgery because the plaintiff had no income; to rebut other evidence about

financial difficulties; to impeach the credibility of a plaintiff's testimony about his financial situation; and to show failure to mitigate damages. Filing 87 at 2–3.

In reply, Nielson argues that Union Pacific has not shown that any of the unusual circumstances that Union Pacific asserts would "open the door" to evidence of collateral benefits are present in this case. Filing 96 at 1.

The Court will take Union Pacific at its word that it does not intend to offer such evidence and deny this part of Nielson's Omnibus Motion without prejudice to timely objection should Union Pacific attempt to offer such evidence at trial for a purpose Nielson believes is improper. The Court will not speculate at this time on the circumstances in which Nielson might "open the door" to such evidence, but the door will not be opened simply to show failure to mitigate damages without some evidence that the receipt of collateral source benefits was a motive or excuse for not mitigating damages.

### 2. Evidence of Nielson's Prior Medical Treatment or Conditions

The next category of evidence that Nielson challenges in his Omnibus Motion is described as "[a]ll evidence, statements, or comments concerning Plaintiff's prior medical treatment/conditions that are not at issue in this litigation." Filing 68 at 1. Nielson argues that his past medical history involves treatment for conditions wholly unrelated to his claim in this matter and that there is no evidence that his prior medical history disabled him from working at the time of the incident at issue. Filing 69 at 9–10. Nielson argues that in the absence of any supporting evidence that any injuries or disabilities claimed are preexisting or would have occurred regardless of the pertinent incident, all evidence of prior conditions is inadmissible. Filing 69 at 10. Union Pacific responds that although Nielson's primary alleged injuries in this case relate to his foot, his

general health, including his cancer diagnosis, bear on his life expectancy, as well as his ability to obtain and retain employment. Filing 87 at 3.

In reply, Nielson argues that Union Pacific apparently does not dispute exclusion of evidence of Nielson's prior medical treatment or conditions other than his cancer. Filing 96 at 2.

The Court already declined to exclude evidence of Nielson's cancer diagnosis in § II.B. above. However, until and unless Union Pacific demonstrates—outside the presence of the jury in the first instance—that there is evidence that a medical condition unrelated to Nielson's foot injury is relevant to any issue, such as his ability to work or life expectancy, such evidence is excluded. This part of Nielson's Omnibus Motion is granted.

That said, the Court believes that Nielson's assertion that his "past medical history includes treatment for conditions wholly unrelated to his claim in this matter" may undermine Nielson's request for an "eggshell-plaintiff instruction." Before the Court will give such an instruction, Nielson must present evidence that he had a pre-existing injury or condition before the incident in question that made him more susceptible to injury than a person in good health. *See Stevens v. Bangor & Aroostock R. Co.*, 97 F.3d 594, 601 (1st Cir. 1996) (approving a "pre-existing injury" instruction).

### 3. Undisclosed Evidence

Nielson's Omnibus Motion also seeks exclusion of "[e]vidence or witnesses that were not timely disclosed under the Federal Rules of Civil Procedure and the Court's Final Progression Order including Defendant's late-disclosed surveillance video." Filing 68 at 1. The Court will not grant a motion that simply asks the Court to apply the law, in this case, Federal Rules of Civil Procedure 26 (discovery rules) and 37(c) (sanctions for discovery abuses) or the deadlines in the

14

Rule 16 progression order. *See United States v. Moua*, No. CR 23-179 (JRT/LIB), 2024 WL 1479166, at *1 (D. Minn. Apr. 5, 2024) ("The Court will decline to issue a ruling on the motions in limine that merely request the parties follow the law because it finds such a ruling unnecessary and is prepared to address those issues if they arise at trial."). Therefore, the Court will only consider this part of the Omnibus Motion as to specific evidence that Nielson asserts was untimely disclosed, which is a one-hour and nine-minute surveillance video of Nielson taken by Union Pacific on April 13, 2024. Filing 69 at 11.

Nielson contends that the video was included in Union Pacific's exhibit list, but it was not produced to him until September 9, 2024, nearly five months after it was made and a week after the September 3, 2024, deadline for submission of exhibits to the Court. Filing 69 at 11. Nielson argues that the video was subject to his discovery requests and that the untimely disclosure means that he has been unable to investigate the circumstances of the surveillance, to depose the videographer, or otherwise to prepare to address this evidence, so that it should be excluded pursuant to Federal Rule of Civil Procedure 37(c). Filing 69 at 11. Nielson argues that Union Pacific was aware of this evidence and chose not to disclose it until the last minute even though it was subject to Nielson's discovery requests. Filing 69 at 12. He argues that his inability to conduct discovery or due diligence in relation to the video greatly prejudices him if Union Pacific is allowed to present it at trial. Filing 69 at 13.

As to the surveillance video, Union Pacific argues that the deadline to produce evidence in response to discovery was September 1, 2023, but that the video did not even exist until April 13, 2024. Filing 87 at 5. Union Pacific argues that it "produced the video on September 10, 2024, shortly after it was received from its private investigator on July 30, 2024." Filing 87 at 5. Union

Pacific argues that its production of the video complied with Rule 26. Filing 87 at 5–6. Union Pacific also argues that there is no dispute that the subject of the video is Nielson and that the video is relevant and helpful to the jury in relation to Nielson's ability to stand for extended periods of time, to walk up to at least one mile on uneven surfaces, and to lift more than ten pounds, all contrary to his treating physician's restrictions. Filing 87 at 5.

In reply, Nielson argues that Union Pacific's counsel admittedly possessed the video without producing it for 40 days, so that Union Pacific's claim that it timely produced the video "shortly after it was received" is not credible. Filing 96 at 2. Instead, Nielson accuses Union Pacific of "sandbagging." Filing 96 at 3.

Notably, Union Pacific does not deny that production of the video was required in response to Nielson's discovery requests and Federal Rule of Civil Procedure 26. *See* Filing 87 at 5–6. Instead, Union Pacific argues that the video was disclosed within a reasonable time after it was made and that it is very probative on issues in the case. The dispute over the timeliness of the disclosure of the video requires a brief summary of standards for disclosures of evidence and sanctions for failure to make timely disclosures.

Federal Rule of Civil Procedure 26 requires compliance with discovery requests and supplementation of responses when new evidence is discovered. Fed. R. Civ. P. 26. "The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in [Federal Rule of Civil Procedure] 37." *See Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (*Petrone I*) (quoting *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018)). Specifically, Rule 37(c)(1) provides, "If a party fails to provide information . . . as required by Rule 26(a)," then the party may not use that information at trial, "unless the failure was

16

substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Although Rule 37(c)(1) is not applicable until the undisclosed evidence is used at trial, *see Petrone I*, 940 F.3d at 435; *accord Petrone v. Werner Enterprises, Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (*Petrone II*) (emphasizing this point, citing *Petrone I*, 940 F.3d at 435), Union Pacific has clearly shown its intent to use the challenged surveillance video at trial by including it in its exhibit list and arguing for its admissibility at trial in response to a motion to exclude it.

Bad faith is not required to bar untimely disclosed evidence if there is no justification. *Vanderberg*, 906 F.3d at 704. However, as the Eighth Circuit Court of Appeals has explained in more detail,

> "A district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide information ... in compliance with Rule 26(a)." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644–45 (8th Cir. 2022) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). In fashioning a remedy, courts should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* at 645 (quoting *Wegener*, 527 F.3d at 692).

*Zick v. Paccar, Inc.*, 47 F.4th 672, 677 (8th Cir. 2022). As to "surprise and prejudice," even if a disclosure is inadequate, the complaining party must articulate how it was (or will be) prejudiced by the late disclosure. *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 409 (8th Cir. 2023).

As to sanctions under Rule 37(c)(1), the district court has discretion to consider lesser sanctions than exclusion of the evidence, but "the district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute." *Vanderberg*, 906 F.3d at 704 (quoting *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011)). Rather, the discretion "narrows as the severity of the sanction or remedy it elects increases." *Id.* (quoting *Young*, 664 F.3d at 734).

17

Specifically, "[w]here the exclusion of evidence is tantamount to dismissal, a district court may need to first consider the possibility of lesser sanctions." *Id*. at 704–05. The party facing Rule 37(c)(1) sanctions has the burden to show its misconduct deserves only a lesser sanction, but "[t]he district court d[oes] not abuse its discretion by not imposing a lesser sanction when [that party] never request[s] one." *Id*. at 705.

The Court is skeptical of Union Pacific's statement that it turned over the surveillance video "shortly after" receiving it from its private investigator when Union Pacific got the video on July 30, 2024, but did not produce it to Nielson until six weeks later on September 10, 2024. Filing 87 at 5. The delay in producing the video is all the more suspect when the video was not disclosed until just over a month before trial was scheduled to begin on October 15, 2024. Nevertheless, even if the delay was not "substantially justified," the Court is not convinced that it was harmful or prejudicial such that it must be excluded. *See* Fed. R. Civ. P. 37(c)(1) (providing a sanction for failure to comply with Rule 26(a) "unless the failure was substantially justified or is harmless"); *Zick*, 47 F.4th at 677 (directing courts to consider *inter alia* "the reason for noncompliance" and the "prejudice" to the party who requested the discovery before imposing a Rule 37(c)(1) sanction for untimely disclosure (quoting *Gruttemeyer*, 31 F.4th at 645)).

Nielson is required to articulate how he was (or will be) prejudiced by the late disclosure. *Wallace*, 78 F.4th at 409. Nielson has attempted to do so by asserting that he is prejudiced by the lack of opportunity to investigate the circumstances of the surveillance, depose the videographer, or otherwise prepare to address the evidence. Filing 69 at 11. The Court is not convinced by this assertion, where Nielson has not pointed to anything suggesting that the video is not actually of him; he has not denied that he engaged in the activities depicted so that his only surprise is that

Union Pacific learned of those activities; and he has not made any effort to request leave to depose the videographer or otherwise to investigate the circumstances of the surveillance in the month since the video was produced to him. *See Zick*, 47 F.4th at 677 (explaining that the court should also consider "the surprise and prejudice to the opposing party" (quoting *Gruttemeyer*, 31 F.4th at 645)). Nielson also essentially concedes the importance of the information in the video, *id.* (directing consideration of "the importance of the information" (quoting *Gruttemeyer*, 31 F.4th at 645)), by stating that the evidence "bears directly on the plaintiff's physical condition," so that "the surveillance evidence is relevant to the subject matter of the case." Filing 69 at 12. The disclosure of the video was not so late nor is the video so disproportionately long that allowing it into evidence "would disrupt the order and efficiency of the trial." *See Zick*, 47 F.4th at 677 (directing consideration of this factor (quoting *Gruttemeyer*, 31 F.4th at 645)). The Court finds that no Rule 37(c) sanction is appropriate in this case for belated disclosure of the video.

For these reasons, this part of Nielson's Omnibus Motion is denied both as to a general prohibition on late disclosed evidence and as to the specific request to exclude the surveillance video as untimely disclosed.

### 4. Evidence of Inappropriate Jobs

The next category of evidence that Nielson seeks to exclude is described as "[e]vidence of jobs that are beyond [his] physical capacity; outside Plaintiff's community; or that are not 'Bona Fide' employment offers." Filing 68 at 1. Nielson argues that such jobs "do not support [a] failure to mitigate defense and therefore should be excluded." Filing 68 at 1.

More specifically, Nielson argues that evidence that there are job positions available that are beyond a plaintiff's physical capabilities does not support a failure-to-mitigate defense. Filing

19

68 at 13. He also asserts that evidence that jobs are available but that require a plaintiff to move away from his or her community and family does not support a failure-to-mitigate defense. Filing 69 at 14. Lastly, Nielson argues that evidence of job positions where there has been no bona fide offer of employment made before trial does not support a failure-to-mitigate defense. Filing 69 at 14. Nielson argues that Union Pacific has not pointed to any specific jobs in his community, any "bona fide" offers, or any jobs that he could perform. Filing 69 at 14–15.

Union Pacific responds to this part of Nielson's Omnibus Motion in its response to his Motion in Limine for Failure to Follow Medical Advice. *See* Filing 87 at 6 (cross-referencing its response to the other Motion); Filing 85 at 4–5. Union Pacific asserts that while Nielson seeks to exclude evidence of jobs beyond his physical capabilities, his physical capabilities are in dispute. Filing 85 at 4. Union Pacific asserts that the jury should be allowed to hear conflicting expert testimony on Nielson's physical capabilities, including specifically evidence from its rehabilitation expert that "Mr. Nielson is not precluded from returning to his previous occupation as a Switchman with UPRR." Filing 85 at 4–5 (quoting Filing 86-2 at 8).

In reply, Nielson argues that Union Pacific does not dispute that a mitigation defense cannot be supported by evidence of jobs for which there has been no bona fide offer of employment before trial, the plaintiff would be required to move away from his community, or the job is beyond a plaintiff's physical limitations. Filing 96 at 4. He argues that the crux of Union Pacific's response is that Union Pacific should be allowed to present its experts' testimony that Nielson can return to work at Union Pacific despite the fact that there is no evidence of a bona fide offer of employment and no evidence of Union Pacific jobs available within Nielson's physical capacities in his

20

community. Filing 96 at 4. Nielson labels Union Pacific's evidence speculative in the absence of

a bona fide job offer or a position in his community. Filing 96 at 5–6.

In a prior FELA case before this Court against Union Pacific, the injured plaintiff—who

was represented by the same counsel as Neilson has in this case—likewise sought to exclude

"evidence of jobs that are beyond his physical capacity, outside of his community, or are not 'bona

fide' employment offers." *Walls v. Union Pac. R.R. Co*., No. 8:20CV413, 2022 WL 4082143, at

*4 (D. Neb. Sept. 6, 2022). In *Walls*, this Court denied the plaintiff's motion for the following

reasons:

> In a FELA case, the Eighth Circuit Court of Appeals imposed no limitations
> like those Walls asserts here on the evidence of jobs relevant to a failure-to-mitigate
> defense. *See Niemiec v. Union Pac. R.R. Co*., 449 F.3d 854, 858 (8th Cir. 2006).
> Instead, the court considered a railroad's evidence of jobs listed in the *Dictionary
> of Occupational Titles* that the railroad employee, who had chosen not to work in
> any capacity, could have performed; evidence of jobs he could have applied for but
> did not both within the railroad and elsewhere without obtaining further education;
> and evidence of the income he could have earned in a job outside or inside the
> railroad without obtaining further education. *Id.* Furthermore, applicable model
> jury instructions establish "reasonableness" considerations as paramount when
> considering the sufficiency of an employee's efforts to mitigate damages. *See* 8th
> Cir. Model Jury Instruction 15.32, n.6 (stating that, if the evidence supports an
> instruction on failure to mitigate damages in a FELA case, the appropriate
> instruction is, "If you find that the defendant has proved that the plaintiff has failed
> to take reasonable steps to minimize [(his) (her)] damages, then your award must
> not include any sum for any amount of damage which you find plaintiff might
> reasonably have avoided by taking such steps."); *Niemiec*, 449 F.3d at 858 n.3
> (explaining that the appropriate instruction on failure-to-mitigate damages in a
> FELA case was the Iowa model stating, "(1) there was something the plaintiff could
> have done to mitigate his loss, (2) requiring the plaintiff to do so was reasonable
> under the circumstances, (3) the plaintiff acted unreasonably in failing to undertake
> the mitigating activity, and (4) a casual connection exists between the plaintiff's
> failure to mitigate and the damages claimed"). In the Court's view, it is for the jury
> to decide what jobs are reasonably considered beyond Walls's physical capacity;
> whether it is reasonable under the circumstances for him to take a job outside of his
> community and to commute to and from it; and whether any job offers, or for that
> matter any job listings, are sufficiently "bona fide" or legitimate to be reasonably
> available to Walls.

*Walls*, 2022 WL 4082143, at *5. Nielson has not convinced the Court that the result in this case should be any different.

Therefore, this part of Nielson's Omnibus Motion is denied.

### 5. *Evidence of Allegedly Available Specific Jobs*

The last category of evidence that Nielson seeks to exclude that is in dispute is "Evidence and Testimony Regarding Any Specific Job Openings UP Contends Were Reasonably Available to Plaintiff." Filing 68 at 2. Nielson argues that Union Pacific has not introduced any evidence of specific jobs available to him. Filing 69 at 18. Nielson contends that despite depositions and discovery on the issue, Union Pacific has not identified any jobs that it asserts that he can perform. Filing 69 at 19. He asserts that Union Pacific identified potential job titles as Yard Master and Clerk, but Union Pacific never identified when such a job was available to him or where it was located. Filing 69 at 19. He contends that Union Pacific's vocational expert has—at most— identified kinds of jobs supported by statistics on their availability generally rather than information about any specific job postings. Filing 69 at 19–20.

Union Pacific again cross-references its Opposition to Plaintiff's Motion in Limine to Exclude Argument or Testimony on Failure to Follow Medical Advice and Paragraphs 4 and 10 of Plaintiff's Omnibus Motion in Limine as providing the pertinent response. Filing 87 at 6 (citing Filing 85). The Court summarized Union Pacific's response from that Opposition in addressing the category of evidence discussed just above. Union Pacific did not address Nielson's contention that Union Pacific failed to identify any specific jobs available to him and should not now be permitted to try to do so. *See generally* Filing 85.

In reply, Nielson "requests the Court grant his request to prevent [Union Pacific] from ambushing him with evidence of specific jobs Union Pacific may attempt to contend were reasonably available to Plaintiff since the time of his incident." Filing 96 at 7.

The Court stands by its conclusion above (and in *Walls*) that whether any job offers, or for that matter any job listings, are sufficiently "bona fide" or legitimate to be reasonably available to a plaintiff is for the jury to decide. *Walls*, 2022 WL 4082143, at *5. However, to have any relevance—specifically, to be "reasonably" available—such job offers or job listings must be for specific jobs then available, or actually available within a pertinent timeframe, not merely theoretically or statistically available nationwide. *See* 8th Cir. Model Jury Instruction 15.32 n.6 (explaining that the defendant must show there was something the plaintiff could reasonably have been required to pursue under the circumstances); *Niemiec*, 449 F.3d at 858 n.3 (same). According to Nielson, Union Pacific has not identified any such job offers or job listing for specific jobs available within a pertinent timeframe in response to Nielson's discovery requests, and Union Pacific has not identified such jobs or job offers that it has produced. Thus, rather than a question of relevance and admissibility, the question is one of whether Union Pacific should be sanctioned if Union Pacific attempts to use such previously undisclosed evidence at trial. If Union Pacific attempts to produce such evidence at trial, Union Pacific will have to demonstrate outside the presence of the jury that it properly disclosed that evidence prior to trial or was somehow justified in failing to do so and why the submission of such evidence at trial does not prejudice Nielson, or that evidence will likely be excluded pursuant to Federal Rule of Evidence 37(c)(1).

This part of Nielson's Omnibus Motion is denied as premature without prejudice to timely objection at trial.

**F.  Defendant's Motions in Limine Nos. 1–6**

In Union Pacific's Motions in Limine Nos. 1–6, Union Pacific challenges five categories of evidence pursuant to Federal Rules of Evidence 401, 402, 403, 404, and 408, Filing 72 at 1, and an expert's testimony pursuant to Federal Rule of Civil Procedure 26, Federal Rules of Evidence 104(a) and 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Filing 73 at 5. Nielson resists exclusion of all six categories of challenged evidence. Filing 82.

As a preliminary matter, Union Pacific argues that the categories of evidence and argument that it challenges are such that no limiting instruction by the Court can cure the prejudice and eliminate the likelihood that the jurors will be influenced by irrelevant and inadmissible matters. Filing 73 at 1–2. As a preliminary matter, Nielson argues that Union Pacific's Motions are improper because they fail to support Union Pacific's "many incorrect and one-sided assertions," fail to identify specific evidence, or seek to limit Nielson's trial strategy. Filing 82 at 7. The Court will consider these issues only to the extent the Court finds is necessary when it addresses each category of challenged evidence in turn.

*1.  Evidence of the Effect of Plaintiff's Injury on His Family*

Union Pacific identifies the first category of evidence that it seeks to exclude as "testimony, argument, or evidence concerning how Plaintiff's spouse or family has been affected by this lawsuit and alleged injuries and damages." Filing 72 at 1. Union Pacific argues that damages for loss of consortium or society are not recoverable in FELA actions. Filing 73 at 2. Accordingly, Union Pacific argues that such evidence is not admissible pursuant to Federal Rules of Evidence 402 and 403 because it is immaterial to Nielson's cause of action, irrelevant, may mislead or confuse the jury, and would be unfairly prejudicial to Union Pacific. Filing 73 at 2.

Nielson argues that this Motion is contrary to law because FELA makes all damages suffered by the plaintiff employee compensable. Filing 82 at 9. Thus, while Nielson recognizes that FELA does not allow a railroad employee's spouse to bring a loss of consortium claim, he argues that Union Pacific is trying to limit damages available to him not just damages that might have otherwise been available to his spouse. Filing 82 at 9. Nielson argues that any element of damages associated with his mental and emotional suffering is directly related to his ability to engage in activities, including those with family and friends, and the effects his ability to engage in such activities has had on his relationships. Filing 82 at 10.

The parties agree that FELA does not allow an injured railroad employee's spouse to bring a claim for loss of consortium or society. In *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), the Supreme Court stated, "There is no recovery for loss of society in a Jones Act wrongful death action," where FELA was incorporated unaltered into the Jones Act. 498 U.S. at 32. The few Circuit Courts of Appeals to consider the question have held that the same is true under FELA. *See, e.g., Kelsaw v. Union Pac. R. Co.*, 686 F.2d 819, 820 (9th Cir. 1982) ("We have held specifically that the spouse of an injured railroad employee may not sue for loss of consortium under FELA." (citing *Jess v. Great Northern Railroad Co.*, 401 F.2d 535 (9th Cir. 1968)); *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1442 (4th Cir. 1993) (holding that an injured railroad worker's spouse's claim for loss of consortium is not actionable under FELA (citing *Kelsaw*, 686 F.2d at 820–21). Thus, Union Pacific's first Motion is granted to the extent that evidence of Nielson's spouse's loss of consortium or services will be excluded.

However, Union Pacific's reference in its brief to "damages for loss of consortium or society," Filing 73 at 2, is ambiguous as to whether Union Pacific also disputes Nielson's ability

25

to recover for his own mental and emotional suffering related to his ability to engage in activities with family and friends and its effects on his relationships. Assuming that Union Pacific also sought exclusion of evidence of Nielson's own emotional suffering related to loss of ability to engage in activities with family and friends, the Court finds such suffering falls within the broad range of compensable emotional suffering under FELA. *See Hall v. BNSF Ry. Co*., 958 F.3d 672, 674 (8th Cir. 2020) ("[T]he jury could award *any damages* to compensate Hall's injuries under FELA." (emphasis in the original)). Therefore, Union Pacific's Motion is denied to the extent it seeks exclusion of evidence of Nielson's own mental and emotional suffering related to lost ability to engage in activities and relationships with others.

Thus, Union Pacific's first Motion is granted in part to the extent that evidence of Nielson's family members' loss of consortium or society will be excluded but it is denied to the extent it seeks exclusion of evidence of Nielson's own mental and emotional suffering related to lost ability to engage in activities and relationships with others.

### 2. *Evidence of the Financial Impact of Plaintiff's Injuries*

Union Pacific's second Motion seeks exclusion of "testimony, argument, or evidence concerning how Plaintiff has been impacted financially, or how his life has been affected by [his] alleged injuries." Filing 72 at 1. Union Pacific argues that Nielson should not be allowed to imply any poverty or neediness or that he has been unable to maintain his standard of living. Filing 73 at 3. Union Pacific contends that any testimony or reference to Nielson's difficult financial condition is irrelevant and only tends to invoke sympathy from the jury. Filing 73 at 3. More specifically, Union Pacific argues that a FELA plaintiff may only recover damages for loss of earnings, medical expenses, and pain and suffering but not for the effect on his financial situation. Filing 73 at 3.

26

Nielson contends that this motion is vague and overbroad as well as inconsistent with the scope of damages for which a railroad is liable under FELA. Filing 82 at 10. He contends that Union Pacific is attempting to limit him from offering evidence at trial related to his economic losses, his experiences, or the impact the injury and job loss have had on him and his family relationships and dynamics. Filing 82 at 10. He argues that he is entitled to put on evidence of his lost earnings and earning capacity to demonstrate that his economic horizons have been limited by his injury. Filing 82 at 11.

The Court reads Union Pacific's Motion to be more limited than Nielson does. The Court reads Union Pacific's statement, "or how [Nielson's] life has been affected by [his] alleged injuries" in the context of the preceding phrase, "evidence concerning how Plaintiff has been impacted financially." Filing 72 at 1. Thus, the Court reads the latter phrase like the preceding one to relate to evidence of how Nielson's life has been affected financially by his alleged injuries. To put it another way, the Court understands Union Pacific to be challenging evidence of Nielson's financial condition as it relates to his poverty or neediness or ability to maintain his standard of living, *see* Filing 73 at 3, rather than evidence of his experiences or the impact the injury and job loss have had on him and his family relationships and dynamics, *see* Filing 82 at 11.

Even so, Union Pacific's Motion is overbroad to the extent that it could be read to seek exclusion of all "testimony, argument, or evidence concerning how Plaintiff has been impacted financially." Filing 72 at 1. Nielson is specifically allowed to present evidence of his lost earnings and lost earning capacity. *See, e.g.* 8th Circuit Model Civil Jury Instruction 15.70; *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 317 (2019) ("FELA damages for lost wages . . . are functionally equivalent to an award of backpay. . . ."); *Bissett v. Burlington N. R. Co.*, 969 F.2d 727, 731 (8th Cir. 1992)

27

("Damages for the injury of loss of earning capacity may be recovered in a FELA action."). On the other hand, evidence of a FELA plaintiff's poverty, financial hardship, or inability to maintain his standard of living is more prejudicial than probative because it invites a decision based on emotion or sympathy rather than on the evidence of actual financial injury. *See Redd*, 81 F.4th at 828 (evidence may be excluded under Rule 403 if it has an undue tendency to suggest decision on an improper basis including evidence so inflammatory as to divert the jury's attention from the material issues in the trial).

Thus, Union Pacific's Motion to exclude evidence of Nielson's financial condition is granted as it relates to his poverty, financial hardship, or ability to maintain his standard of living. However, this ruling does not preclude Nielson from offering evidence of lost earnings or lost earning capacity.[2]

### 3. *Evidence that the Railroad is an Inherently Dangerous Workplace*

Union Pacific's third Motion seeks to exclude "any evidence or arguments that a railroad is an inherently dangerous place to work." Filing 72 at 1. Union Pacific contends that this case involves specific work conditions to which Nielson was exposed, while suggestions that railroad work is inherently dangerous or unrelated safety conditions or hazards are irrelevant and prejudicial. Filing 73 at 4. Union Pacific argues further that such evidence is impermissible reputation or character evidence offered to show dangerous conduct on a particular occasion in violation of Federal Rule of Evidence 404. Filing 73 at 4. Furthermore, Union Pacific argues that

---

[2] A FELA plaintiff may also be entitled to recover damages for emotional distress from the impact of his injury on his ability to return to work and to provide for himself and his family as a foreseeable consequence of his injury. *See Stanley v. BNSF Ry. Co.*, No. CV 1:11-CV-178-SA-AA, 2013 WL 12309456, at *7 (N.D. Miss. Jan. 24, 2013). However, the Eighth Circuit has cautioned that "if a plaintiff is claiming emotional injury on account of financial stress following an accident, then defendant may inquire into collateral sources since these, if there are any, would tend to reduce the plaintiff's stress." *Moses v. Union Pacific R.R.*, 64 F.3d 413, 416 (8th Cir. 1995).

the probative value if any of such evidence is significantly outweighed by the danger of unfair prejudice to Union Pacific. Filing 73 at 5.

Nielson argues that the motion is overbroad, ambiguous, and unenforceable. Filing 82 at 13. He argues that Union Pacific's motion likely seeks exclusion of tasks a conductor performs and the associated dangers which are in themselves part of what limits his ability to return to such work with his injuries. Filing 82 at 13. He argues that the issue of whether the railroad is inherently dangerous is relevant to what tasks he can and cannot safely perform. Filing 82 at 13. Indeed, Nielson argues that Congress and the courts have recognized that the job of a trainman is dangerous and that FELA was enacted in response to the inherent risks in railroad work. Filing 82 at 13–14. He contends that he must be allowed to argue that the dangerous nature of the work severely limits his options for returning to work and mitigation. Filing 82 at 14.

The Court does not dispute that "FELA was enacted in response to the dangers inherent in working for the railroad and the high rate of injuries among railroad employees." *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 911 (7th Cir. 2012) (citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43 (1994)). Nevertheless, there is a difference in the probative value and potential for prejudice between "evidence or arguments that a railroad is an inherently dangerous place to work," which Union Pacific seeks to exclude, Filing 72 at 1, and evidence that a specific job poses specific risks for a plaintiff as a result of an injury in a FELA damages case. Evidence concerning the specific risks to the plaintiff of a specific job is probative of the plaintiff's ability to return to work, as it goes to whether it is more or less likely that the plaintiff can perform the job safely. *See* Fed. R. Evid. 401, 402. The Court sees no unfair prejudice to either party of admitting such evidence at trial. *See* Fed. R. Evid. 403; *Wright*, 993 F.3d at 1061 (evidence must

29

be "unfairly prejudicial" to be excluded under Rule 403). On the other hand, evidence or argument that a railroad is an inherently dangerous place to work is inherently inflammatory—and the more inflammatory and the less probative it becomes as the danger is asserted to be general rather than in relation to relevant job activities. *See Redd*, 81 F.4th at 828 (explaining that "[u]nfair prejudice means an undue tendency to suggest decision on an improper basis, including evidence which is so inflammatory on its face as to divert the jury attention from the material issues in the trial").

Thus, Union Pacific's Motion is granted as to exclusion of evidence or arguments that a railroad is an inherently dangerous place to work. This ruling does not limit or foreclose evidence or argument concerning the specific risks to Nielson of a specific job with the railroad.

### 4. Evidence from Dr. Rebecca Levine

Next, Union Pacific seeks to "[e]xclude and/or limit the testimony of Primary Care Doctor, Dr. Rebecca Levine, to exclude her from offering any opinions related to Mr. Nielson's ability to return to work at Union Pacific as a conductor and/or engineer and opinions related to his permanent restrictions." Filing 72 at 1 (typographical error corrected). Specifically, Union Pacific argues that "Dr. Levine should be precluded from offering at the trial of this matter th[e] opinion that it would be 'difficult' for Plaintiff to perform his former job as a conductor for Union Pacific or that he would be unable to return to work at Union Pacific as a conductor or engineer." Filing 73 at 5. Union Pacific argues that these opinions are speculative, lack foundation and reliability, do not meet *Daubert* standards, and are not tied to the facts and circumstances of the case. Filing 73 at 5. Union Pacific argues further that the disclosure of these opinions does not meet the requirements of Federal Rule of Civil Procedure 26. Filing 73 at 5. Union Pacific argues that Dr. Levine's return-to-work opinions were formulated "on the spot" during her deposition where

she heard for the first time a job description for a Union Pacific Conductor/Trainman. [Filing 73 at 7](). Union Pacific argues that Dr. Levine admitted that she had no first-hand knowledge of what a trainman does. [Filing 73 at 7]()–8.

Nielson argues that this Motion in Limine is untimely and meritless. [Filing 82 at 14](). Nielson argues that Dr. Levine is well-qualified to testify as an expert in this matter, which Union Pacific does not dispute. [Filing 82 at 15](). Nielson argues further that Union Pacific's motion is an untimely *Daubert* challenge to Dr. Levine's specific testimony. [Filing 82 at 15](). As Nielson points out, the "deadline for filing motions to exclude testimony on *Daubert* and related grounds" was April 1, 2024. [Filing 35 at 1](). Nielson argues that there is no excuse for the untimely challenge because Dr. Levine was deposed more than a year before the *Daubert* deadline. [Filing 82 at 15](). Nielson argues that the motion is also meritless because Dr. Levine was identified as a treating medical expert who would testify "that because of the injuries suffered by Plaintiff on October 26, 2021, Plaintiff was no longer physically able to perform his railroad job." [Filing 82 at 16](). Nielson argues that Dr. Levine explained the basis for her opinions in her deposition and used the proper methodology of a treating physician. [Filing 82 at 16]()–20.

The Court concludes first that Union Pacific's *Daubert* challenge to Dr. Levine's opinion is untimely because the deadline for such a challenge was April 1, 2024, [Filing 35 at 1](), and Union Pacific neither acknowledges that deadline nor offers any excuse for the untimeliness of its challenge in its motion. *See* [Filing 73 at 5]()–11. The failure to mount a timely *Daubert* challenge has led to a waste of resources on the eve of trial that would have been better directed to other trial preparations. For that reason alone, Union Pacific's *Daubert* challenge to Dr. Levine's testimony is denied.

31

Furthermore, the Court concludes that this is not a case in which "there is simply too great an analytical gap between the data [Dr. Levine considered] and the opinion[s] [she] proffered." *In re Bair Hugger*, 9 F.4th at 777–78 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Neither is Dr. Levine's opinion "'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *Id.* at 778 (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)). Rather, this is a case in which the "general rule" that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility" is applicable. *Id.* at 778. In this case, in light of precedent showing that "the rejection of expert testimony is 'the exception rather than the rule,'" *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)), and that *Daubert* and its progeny "call for liberal admission of expert testimony," *In re Bair Hugger*, 9 F.4th at 777, the Court denies Union Pacific's motion to exclude Dr. Levine's return-to-work opinions. It is true that Union Pacific has identified grounds to impeach or challenge Dr. Levine's return-to-work opinions, but that simply confirms the Court's conclusion that this is a case in which "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means'" of addressing Dr. Levine's return-to-work testimony. *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596). Thus, Union Pacific's Motion to exclude Dr. Levine's return-to-work opinions is also denied on the merits.

5. *Comment or Testimony Regarding Future Medical Damages*

The fifth category of evidence that Union Pacific seeks to exclude is "any comment or testimony regarding a claim for damages associated with future medical care or treatment." Filing 72 at 1. Union Pacific argues that any claim for such future medical damage is submissible only

when established with reasonable certainty after substantial evidence has been introduced. Filing 73 at 11. However, Union Pacific argues that here Nielson has not identified a life care planner or disclosed any expert opinions related to potential future costs associated with required future medical care making any testimony related to future medical damages purely speculative. Filing 73 at 11–12.

Nielson responds that at trial he "may offer evidence related to his probable future treatment based on the costs for similar treatment in the past." Filing 82 at 23–24. Nielson argues that he expects that evidence will develop during trial that he will require periodic medical treatment in the future that is similar to his past treatment, including testimony that his insoles wear out, he requires specialty footwear, and he has other ongoing medical expenses. Filing 82 at 24. He argues that future medical needs do not require expert testimony where—as here—they lie within the normal experience of jurors. Filing 82 at 24.

The Eighth Circuit has recognized that lay observations of a need for future medical treatment may be sufficient basis for submitting future medical damages to the jury. *Penney v. Praxair, Inc.*, 116 F.3d 330, 334 (8th Cir. 1997) (finding sufficient evidence of future medical expenses including testimony from the injured person's family members about his continuing symptoms and their intent to seek treatment for his pain despite previous lack of success). The Eighth Circuit also observed,

> In determining the amount of future damages, the jury was presented with itemized bills of past medical expenses and instructed to consider the reasonably necessary medical expenses to be incurred in the future. From this evidence, the jury could reasonably estimate the cost of future medical expenses.

*Penney*, 116 F.3d at 334. It follows from *Penney* that Nielson's own testimony that his insoles wear out, that he requires specialty footwear, and that he has other ongoing medical expenses,

supported by evidence of his past expenses, will be sufficient to support a claim for future medical expenses.

Union Pacific's Motion to exclude comment or testimony regarding a claim for damages associated with future medical care or treatment is denied.

### 6. *Evidence of Loss of Household/Family Services*

Union Pacific's last Motion in Limine seeks to "[e]xclude any comment or testimony concerning loss of household/family services." Filing 72 at 2. The entirety of Union Pacific's argument on this category of evidence is the following:

> Plaintiff has not identified a life care planner or disclosed any expert opinions related to a potential future change to Plaintiff's own attested current ability to perform household/family services, as such any testimony related to past and future household/family service damages would be purely speculative, lacks foundation and reliability, contradicts the current facts and evidence in this case, and should be stricken.

Filing 73 at 12.

Nielson points out that Union Pacific cites no authority in support of its position. Filing 82 at 25. More importantly, he argues that lay testimony on this issue based on personal observations would be permissible under Federal Rule of Evidence 701. Filing 82 at 25. He argues that "[t]he ability to perform household tasks and family services is squarely within the realm of everyday activity that a lay witness would be able to comment on and fits squarely within the jury's purview to weigh the evidence accordingly." Filing 82 at 25–26. He contends that Union Pacific's assertion that such testimony contradicts facts and evidence should be addressed through cross-examination and presentation of contrary evidence not through exclusion of evidence. Filing 82 at 26.

As the Eighth Circuit has explained,

[A] lay witness is permitted to express an opinion that is "rationally based on his ... perception, and helpful to ... determining a fact in issue." *United States v. Lemons,* 792 F.3d 941, 948 (8th Cir. 2015) (citing Fed. R. Evid. 701). "Personal knowledge or perceptions based on experience is sufficient foundation for lay opinion testimony." *United States v. Smith,* 591 F.3d 974, 982 (8th Cir. 2010) (citation omitted).

*United States v. Lomas,* 826 F.3d 1097, 1106–07 (8th Cir. 2016). Here, a lay witness such as Nielson himself may testify based on personal knowledge or perceptions and his personal experience about the household or family services he is now able or unable to perform. Nielson is correct that Union Pacific may impeach that testimony if it has contrary evidence, but that is not a reason to exclude his evidence.

Union Pacific's Motion in Limine to exclude any comment or testimony concerning loss of household/family services is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.    Nielson's Motion in Limine to Exclude Argument or Testimony Related to Plaintiff's Cancer Diagnosis, Filing 62, is denied;

2.    Nielson's Motion in Limine to Exclude Argument or Testimony Stating Plaintiff Should Have Participated in a Functional Capacity Evaluation, Filing 64, is denied;

3.    Nielson's Motion in Limine to Exclude Argument or Testimony on Failure to Follow Medical Advice, Filing 66 at 1, is granted;

4.    Nielson's Omnibus Motion in Limine, Filing 68, is

a.    denied without prejudice to objection at trial as to category 1 ("All evidence, arguments, and comments concerning Plaintiff receiving collateral source benefits including, but not limited to U.S. Railroad Retirement Board (RRB) sickness benefits");

b.    granted as to category 2 ("All evidence, statements, or comments concerning Plaintiff's prior medical treatment/conditions that are not at issue in this litigation");

c.    denied as to category 3 ("Evidence or witnesses that were not timely disclosed under the Federal Rules of Civil Procedure and the Court's Final Progression Order including Defendant's late late-disclosed surveillance video") both as to a general prohibition on late disclosed evidence and as to the specific request to exclude the surveillance video as untimely disclosed;

d.    denied as to category 4 ("Evidence of jobs that are beyond [Nielson's] physical capacity; outside Plaintiff's community; or that are not 'Bona Fide' employment offers");

e.    granted without dispute as to categories 5 through 9; and

f.    denied as premature without prejudice to timely objection at trial as to category 10 ("Evidence and Testimony Regarding Any Specific Job Openings UP Contends Were Reasonably Available to Plaintiff");

5.    Union Pacific's Motions in Limine Nos. 1–6 are

a.    granted as to No. 1 ("testimony, argument, or evidence concerning how Plaintiff's spouse or family has been affected by this lawsuit and alleged injuries and damages") to the extent that evidence of Nielson's spouse's loss of consortium or services

36

will be excluded, but it is denied to the extent it seeks exclusion of evidence of Nielson's own mental and emotional suffering related to lost ability to engage in activities and relationships with others;

      b.     granted as to No. 2 ("testimony, argument, or evidence concerning how Plaintiff has been impacted financially, or how his life has been affected by [his] alleged injuries"), where the motion is construed as limited to evidence of alleged poverty, financial hardship, or inability to maintain a standard of living;

      c.     granted as to No. 3 ("any evidence or arguments that a railroad is an inherently dangerous place to work");

      d.     denied as to No. 4 ("the testimony of Primary Care Doctor, Dr. Rebecca Levine, to . . . any opinions related to Mr. Nielson's ability to return to work at Union Pacific as a conductor and/or engineer and opinions related to his permanent restrictions") both as untimely and on the merits;

      e.     denied as to No. 5 ("any comment or testimony regarding a claim for damages associated with future medical care or treatment"); and

      f.     denied as to No. 6 ("any comment or testimony concerning loss of household/family services").

Dated this 10th day of October, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge